Filed 10/15/13  Mansour-White v. Grant & Weber CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NATALIE MANSOUR-WHITE et al., | B239900 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BC435412) |
| GRANT & WEBER, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm H. Mackey, Judge.  Reversed.

Dix and Associates and Lloyd D. Dix for Defendant and Appellant.

The Law Office of Jay W. Smith and Jay W. Smith for Plaintiffs and Respondents.

_____

Grant & Weber, Inc. (Grant & Weber) brought a debt collection action against Natalie Mansour-White (Natalie) and Robert White (Robert; collectively the Whites). Upon learning that the debt had been forgiven, Grant & Weber voluntarily dismissed its complaint against the Whites. The Whites then filed the instant malicious prosecution action against Grant & Weber. Following a bench trial, the trial court found that the Whites had established all elements of malicious prosecution and that Grant & Weber had committed two violations of the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act; Civ. Code, § 1788 et seq.). Grant & Weber appeals.

After reviewing the appellate record, we reverse the judgment. We conclude that there is no evidence of malice, an essential element of the Whites' malicious prosecution claim. We also conclude that all of the evidence presented at trial proves Grant & Weber's bona fide error defense, thereby precluding liability for the alleged Rosenthal Act violations. It follows that the Whites are not entitled to attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Action*

Cedars-Sinai Imaging Medical Group, PC (Imaging Group) provided medical services, such as C.T. scans and M.R.I.'s, to Robert. While Robert's health insurance carrier covered a substantial portion of his medical expenses, a portion remained unpaid. Natalie was trying to work out the debt and was eventually told by someone from the Imaging Group to contact the Cedars-Sinai Medical Center Charity Care Program (Charity Care Program) for financial assistance. From that point forward, unbeknownst to the parties involved, it seems that many activities were taking place almost at the same time:

On February 16, 2009, the Imaging Group assigned the Whites' debt to Grant & Weber for collection. At issue specifically were two unpaid accounts: (1) Account No. 2389723.1 for $1,301, and (2) Account No. 2349012.1 for $394. Not knowing that the Whites were seeking financial aid, Grant & Weber's attorney, Reid L. Steinfeld, prepared a complaint against the Whites for $1,695 (the total amount of the two unpaid accounts), plus attorney fees and costs; that complaint was prepared by April 24, 2009. After it was

2

prepared, Grant & Weber sent the complaint to a process server to file and serve it. The process server generally does not return the documents to Grant & Weber until after the lawsuit has been filed and served; Mr. Steinfeld did not know when the complaint against the Whites had been provided to the process server or how long it took the process server to file and serve the complaint.

Meanwhile, on April 22, 2009, the Charity Care Program notified Robert that he was entitled to "a discount of 100%." Although the Charity Care Program letter identified specific "Accounts Covered," it did not identify the two accounts previously provided to Grant & Weber.

On April 30, 2009, Natalie faxed a letter to Grant & Weber as proof of the charity approval that she and Robert received. Although unclear from the appellate record, it appears that she faxed a copy of the Charity Care Program April 22, 2009, letter, which, it bears repeating, did not identify the two accounts that were the subject of the debt collection complaint.

The following day, someone named "Heather" from Cedars-Sinai Hospital (not the Imaging Group) notified Grant & Weber that the Whites' debt had been forgiven. But, the Imaging Group is Grant & Weber's client, not Cedars-Sinai Hospital. So, Grant & Weber needed to verify the information from "Heather." Thus, Grant & Weber's employee, Robert Chancellor, sought information to see "if it was true."

On May 4, 2009, while Grant & Weber's investigation was ongoing, the complaint against the Whites was filed. The Whites were served on May 17, 2009.

After a period of investigation, on June 11, 2009, Grant & Weber received confirmation from the Imaging Center that the Whites' debt had been written off; the Imaging Center requested that the lawsuit be dismissed. On June 15, 2009, Mr. Steinfeld prepared the form Request for Dismissal and, on June 22, 2009, it was filed.

On June 29, 2009, and July 28, 2009, Robert received debt collection notices from Grant & Weber for a collection account different than those that were the subject of the now-dismissed lawsuit. And, this account was not identified as a covered account in the Charity Care Program April 22, 2009, letter.

3

At some point prior to August 18, 2009, the Imaging Group notified Grant & Weber that this new debt had also been forgiven.

*The Instant Malicious Prosecution Action*

The Whites then brought suit against Grant & Weber for, inter alia, malicious prosecution. According to their first amended complaint, Grant & Weber knew that the collection action lacked probable cause (because the Whites' debt had been forgiven), but filed and prosecuted it anyway. The Whites further alleged violations of portions of the Rosenthal Act (Civ. Code, §§ 1788.11, 1788.12, 1788.14).

Following the presentation of evidence, the trial court found that the Whites had established all elements of malicious prosecution and that Grant & Weber had committed two violations of the Rosenthal Act. Judgment was entered in favor of the Whites, as follows: $30,000 for emotional distress; $2,000 in statutory damages; and $41,262.50 in attorney fees.

Grant & Weber's timely appeal ensued.

## DISCUSSION

I. *Standard of Review*

We review the judgment for substantial evidence. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873.) That includes the element of malice—whether Grant & Weber acted with malice is a question of fact. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874 (*Sheldon Appel*).) If the trial court's resolution of this factual issue is supported by substantial evidence, then we must affirm the judgment. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) It follows that if there is no evidence to support this requisite element, then the judgment must be reversed.

II. *Malicious Prosecution Claim*

The elements of a malicious prosecution action are: (1) the action was commenced by the defendants or at their direction, (2) pursued to a termination in the plaintiff's favor, (3) brought without probable cause, and (4) initiated with malice.[1] (*Sheldon Appel*, *supra*, 47 Cal.3d at pp. 871–872; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965–966.)

"The malice element of the malicious prosecution tort goes to [Grant & Weber's] subjective intent in initiating the prior action. [Citation.] For purposes of a malicious prosecution claim, malice 'is not limited to actual hostility or ill will toward [the Whites]. Rather, malice is present when proceedings are instituted primarily for an improper purpose.' [Citation.] 'Suits with the hallmark of an improper purpose' include, but are not necessarily limited to, 'those in which: "' . . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.'"' [Citation.] [¶] Evidence tending to show that [Grant & Weber] did not subjectively believe that the action was tenable is relevant to whether an action was instituted or maintained with malice. [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.)

We have reviewed the entire appellate record and, simply put, we see no evidence of malice to support a judgment in favor of the Whites on their malicious prosecution

---

[1]    We note that the tort of malicious prosecution is disfavored, both because of its potential to impose an undue chilling effect on the ordinary citizen's willingness to report criminal conduct or bring a civil dispute to court and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 872.)

claim.[2]  There is no evidence of ill will or hostility in Grant & Weber's filing of the debt collection complaint against the Whites.  There is no indication that Grant & Weber was trying to force a settlement unrelated to the merits of the claim.  The Whites did not argue or prove that Grant & Weber brought the debt collection action for some improper ulterior motive.  (See, e.g., *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 54 [attorney admitted filing suit because he "'wanted to show the Appellate Court what a bastard Bertero was'"].)  And, there is no evidence that Grant & Weber initiated the debt collection action solely for the purpose of denying the Whites their property.

The Whites' argument notwithstanding, there also is no evidence that Grant & Weber believed that the Whites' debt was invalid.  The Whites argue that Grant & Weber knew that their debt had been forgiven before the complaint was filed and served upon them.  But, we see no such evidence in the appellate record.  Certainly, Grant & Weber had been notified (by "Heather" and by Natalie) that there may have been some sort of debt forgiveness potential.  And, upon learning of that possibility, Grant & Weber employees did their jobs by attempting to verify the Charity Care Program write-off.  Once Grant & Weber confirmed that the accounts that were the subject of the debt collection complaint had been written off, it took steps to dismiss the complaint against the Whites.  Only 11 days lapsed before the request for dismissal was filed.  Such a short delay is hardly evidence of malice.

III.  *Rosenthal Act Violations*

The trial court awarded the Whites $2,000 in statutory damages for two violations of the Rosenthal Act, presumably arising out of Grant & Weber's June 29, 2009, and July 28, 2009, collection letter notices to Robert.

---

[2]      Because we resolve this appeal on the issue of malice only, we need not address the Whites' reliance upon *Arcaro v. Silva & Silva Enterprises Corp.* (1999) 77 Cal.App.4th 152 as that case only considered the probable cause element (*id*. at p. 157).

The Rosenthal Act was enacted to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts."  (Civ. Code, § 1788.1.)  It outlines certain prohibited conduct by debt collectors.  (See, e.g., Civ. Code, §§ 1788.10, 1788.11, 1788.12.)  But, "[a] debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation."  (Civ. Code, § 1788.30, subd. (e); see also *McCollough v. Johnson, Rodenburg & Lauinger, LLC* (9th Cir. 2011) 637 F.3d 939, 948 [the Fair Debt Collection Practices Act exempts from liability those debt collectors that satisfy the narrow bona fide error defense; to qualify for that defense, the defendant must prove that it violated the statute unintentionally, the violation resulted from a bona fide error, and that it maintained procedures reasonably adapted to avoid the violation].)

Here, there is undisputed evidence that Grant & Weber had adequate procedures in place to ensure compliance with debt collection laws.  And, even assuming that Grant & Weber violated the Rosenthal Act by sending those two collection notices to Robert, unquestionably those violations were unintentional.  As set forth above, the accounts identified in those collection letters were not identified in the Charity Care Program letter as being debts that were written off.  Once the Imaging Center notified Grant & Weber that all collection acts were to cease, Grant & Weber complied and so notified Robert.  In short, the evidence is unequivocal that any violation of the Rosenthal Act by Grant & Weber was unintentional.

IV.  *Attorney Fees*

In light of our conclusion that the judgment must be reversed, it follows that the Whites are not entitled to recover attorney fees.  The award of attorney fees is reversed as well.

**DISPOSITION**

The judgment is reversed. Grant & Weber is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
BOREN

_____, J.
CHAVEZ

8